**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-23325-DIMITROULEAS**

BRIGHTSTAR CORP.,

     Plaintiff,

v.

DAVID MAYLAND,

     Defendant.

_____/

**COUNTER-DEFENDANTS BRIGHTSTAR AND BGG'S JOINT MOTION TO DISMISS
COUNTER-PLAINTIFF/DEFENDANT'S COUNTERCLAIMS WITH PREJUDICE, OR
ALTERNATIVELY, MOTION TO STRIKE JURY DEMAND AND REFERENCES TO
<u>ANTI-SLAPP IN COUNTERCLAIMS AND SUPPORTING MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

<strong>Page</strong>

I.    INTRODUCTION ................................................................................................ 1

II.   MEMORANDUM OF LAW ............................................................................... 2

    A.    Count I of the Counterclaims for Breach of Contract Should be Dismissed Because it Fails to State a Claim Upon Which Relief May Be Granted............... 2

        1.    The Plan's Own Terms Demonstrate that It Is Not an Enforceable Contract Under Florida Law. ................................................................ 2

        2.    Mayland's Claim for Special Damages For Alleged Breach of Contract Should Be Dismissed Because Special Damages Are Not Available For Breach of Contract Under Florida Law ............................ 7

        3.    Count I Should Be Dismissed Against BGG Because BGG Cannot Be Joined As a Party To This Action As A Counter-Claim Defendant .................................................................................................. 7

        4.    Mayland's Claim for Attorneys' Fees Under Count I Should Be Dismissed Because the Plan Does Not Provide For Such Relief, Nor Is It Available Under Florida Law. ...................................................... 8

    B.    Count II Should Be Dismissed Because It Does Not Plausibly State a Claim Under Florida's Private Whistleblower Act ................................................. 8

        1.    Mayland's June 2020 Communications or Counterclaim Do Not Allege a Violation of Law ........................................................................ 9

        2.    The Filing of a Lawsuit Against a Former Employee Does Not Constitute A Retaliatory Personnel Action Under the FWA. ................. 11

        3.    The Timing And Sequence of Mayland's Termination Negates Any Argument that He Would Not Have Been Terminated But For His Protected Activity in June 2020 ...................................................... 12

        4.    Mayland's Claim for Special Damages Under Count II Should Be Dismissed ............................................................................................. 13

    C.    Mayland's Demand For Jury Trial And Anti-SLAPP Allegations Should Be Stricken Pursuant to Rule 12(f) ....................................................... 14

        1.    Mayland's Demand For Jury Trial Should Be Stricken Because Mayland Waived Any Entitlement to A Jury Trial In His RCA ............. 14

        2.    Defendant's SLAPP Allegations Should be Stricken Pursuant to Rule 12(f) ............................................................................................. 17

III.   CONCLUSION................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aery v. Wallace Lincoln-Mercury, LLC*,
   118 So.3d 916 (Fla. 4th DCA 2013) ........................................................................................ 9

*Alvarez v. Royal Atl. Developers, Inc.*,
   610 F.3d 1253 (11th Cir. 2010) ............................................................................................... 13

*Anderson v. Embarq/Sprint*,
   379 F. App'x 924 (11th Cir. 2010) .......................................................................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 8, 18

*Berber v. Wells Fargo Bank, N.A.*,
   No. 16-24918, 2018 BL 537055 (S.D. Fla. May 24, 2018) ..................................................... 14

*Blake v. Batmasian*,
   318 F.R.D. 698 BL 60162 (S.D. Fla. 2017) ............................................................................. 18

*Branche v. Airtran Airways, Inc.*,
   2005 WL 1051097 (M.D. Fla. May 2, 2005) ........................................................................... 10

*Butterfield v. JetBlue Airways Corp.*,
   No. 20-60660-CIV-DIMITOULEAS, 2020 BL 313794 (S.D. Fla. Aug. 17,
   2020) .................................................................................................................................... 9, 10

*Colon v. TRC, Inc.*,
   2007 WL 4145940 (M.D. Fla. Nov. 19, 2007) ........................................................................ 10

*Community Design Corp. v. Antonell*,
   459 So. 2d 343 (Fla. Dist. Ct. App. 1984) ................................................................................ 6

*Delaurier v. American Welding Society, Inc.*,
   881 So. 2d 613 (Fla. 3d DCA 2004) ........................................................................................ 16

*Drago v. Jenne*,
   453 F.3d 1301 (11th Cir. 2006) ............................................................................................... 12

*Foley v. Wells Fargo Bank, N.A.*,
   849 F. Supp. 2d 1345 (S.D. Fla. 2012) .................................................................................... 18

*Garcia v. Chapman*,
　　911 F. Supp. 2d 1222 (S.D. Fla. Nov. 28, 2012) ........................................................ 17

*Hamilton v. Sheridan Healthcorp, Inc.*,
　　No. 13-62008, 2014 WL 537343 (S. D. Fla. Feb. 11, 2014) ............................................ 14, 15

*Hathaway v. Ramco-Gershenson, Inc.*,
　　No. 18-613590-CIV-DIMITROULEAS_ ...................................................................... 10

*Hospicecare of Southeast Florida, Inc. v. Major*,
　　968 So. 2d 117 (Fla. 4th DCA 2007) ......................................................................... 16, 17

*Int'l Fid. Ins. Co. v. Americaribe-Moriarity JV*,
　　234 F. Supp. 3d 1242 (S.D. Fla. 2016) ......................................................................... 8

*Intertech Trading Corp. v. JP Morgan Chase Bank, N.A.*,
　　2017 BL 304417, 7 (S.D. Fla. Aug. 28, 2017) .............................................................. 5, 6

*Jaffe v. Bank of America, N.A.*,
　　395 F. App'x 583 (11th Cir. 2010) ............................................................................. 15

*Kearns v. Farmer Acquisition Co.*,
　　157 So. 3d 458 (Fla. 2d DCA 2015) ......................................................................... 8, 9, 11

*Mancil's Tractor Serv., Inc. v. T&K Constr., LLC*,
　　2016 BL 437736, 3 (S.D. Fla. Mar. 03, 2016) .............................................................. 7

*Milsap v. Cornerstone Residential Management, Inc.*,
　　No. 05-60033, 2007 WL 965590 (S.D. Fla. Mar. 28, 2007) ............................................ 15, 16

*Molina v. Aurora Loan Servs., LLC*,
　　710 Fed. Appx. 837 (11th Cir. 2017) ......................................................................... 6

*Morrison v. Executive Aircraft Refinishing, Inc.*,
　　434 F. Supp. 2d 1314 (S.D. Fla. 2005) ...................................................................... 17

*Myers v. Cent. Florida Investments, Inc.*,
　　2005 WL 8159927 (M.D. Fla. Sept. 1, 2005) .............................................................. 12

*Neitzke v. Williams*,
　　490 U.S. 319 (1989) ............................................................................................ 3

*Nielsen Audio, Inc. v. Clem*,
　　Case No: 8:15-cv-2435-T-27EAJ, 2016 BL 433045 (M.D. Fla. May 09, 2016) ..................... 17

*Oglesbee v. Indymac Financial Servs., Inc.*,
　　675 F. Supp. 2d 1155 (S.D. Fla. 2009) ...................................................................... 14, 15, 16

*OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*,
  359 F. Supp. 3d 1163, 1171 (S.D. Fla. 2018) .......................................................... 4

*OneSource Facility Servs., Inc. v. Mosbach*,
  508 F. Supp. 2d 1115 (M.D. Fla. 2007) .......................................................... 3, 4, 6

*Parrish v. General Motors Corp.*,
  137 So. 2d 255 (Fla. 2d DCA 1962) .......................................................... 3, 5, 6

*Pineda v. PRC, LLC*,
  2011 BL 194084, 4 (S.D. Fla. July 22, 2011) .......................................................... 3

*Pinto v. Microsoft Corp.*,
  No. 12-60509, 2012 BL 252799 (S.D. Fla. Sept. 28, 2012) ................................... 11

*Quaker Oats Co. v. Jewell*,
  818 So.2d 574 (Fla. 5th DCA 2002) .......................................................... 2

*Raney v. Vinson Guard Serv., Inc.*,
  120 F. 3d 1192 (11th Cir. 1997) .......................................................... 13

*Seifert v. U.S. Home Corp.*,
  750 So. 2d 633 (Fla. 1999).......................................................... 16

*Taylor v. Books A Million, Inc.*,
  296 F.3d 376 (5th Cir. 2002) .......................................................... 6

*Trussel v. Quest Diagnostics*,
  Case No. 8:09–cv–811–T–33AEP, 2010 WL 2363390 (M.D. Fla. 2010) .............................. 13

*Tucker v. Fla. Dep't of Transp.*,
  678 Fed. Appx. 893 BL 30964, 4 (11th Cir. 2017).......................................................... 12

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) .......................................................... 2, 3

*Wildstein v. Cheyenne Holdings, Inc.*,
  No. Case No: 6:16-cv-336-Orl-41TBS, 2016 WL 7338516 (M.D. Fla. Dec. 19,
  2016) .......................................................... 12

## STATUTES

Fla. Stat. § 542.335 .......................................................... 16

Fla. Stat. Ann. § 768.295 .......................................................... 17

Florida Whistleblower Act, Fla. Stat. § 448.102 *et seq.*.......................................................... passim

iv

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ................................................................................................ 18

Fed. R. Civ. P. 9(g) ............................................................................................ 7

Federal Rule of Civil Procedure 12(b)(6) ................................................. 1, 3, 18

Federal Rule of Civil Procedure 12(f) .................................................. 1, 14, 17, 18

Federal Rules of Civil Procedure 13 ................................................................ 7

Federal Rules of Civil Procedure 19 ................................................................ 7

Federal Rules of Civil Procedure 20 ................................................................ 7

## I.   __INTRODUCTION__

Pursuant to Local Rule 7.1 and Federal Rule of Civil Procedure 12(b)(6), Plaintiffs Brightstar Corp. ("Brightstar") and Brightstar Global Group, Inc. ("BGG," and together with Brightstar, "Plaintiffs" or "Counter-Defendants"), move to dismiss with prejudice Defendant David Mayland's ("Defendant" or "Counter-Plaintiff") counterclaims for breach of contract and violations of the Florida Whistleblower Act, Fla. Stat. § 448.102 *et seq.* ("FWA"). Specifically, Count I for breach of contract should be dismissed with prejudice on the grounds that it fails to state a claim upon which relief may be granted as to both Counter-Defendants because: (i) by Mayland's own admission, the Long Term Incentive Plan's ("Plan") own terms demonstrate that it is not an enforceable contract under Florida law; and (ii) even if the Plan were construed to be a promise to pay Mayland or other participants a bonus, it is an illusory promise that cannot support a breach of contract claim. In addition, Count I should be dismissed in its entirety as to BGG because it cannot be joined as a newly added party to this action via counterclaims.

At a minimum, and in the alternative should the Court not grant this motion to dismiss in its entirety, the following allegations, claims for relief, and request for jury trial should be dismissed with prejudice or stricken from the Counterclaims: (i) the request for special damages and attorneys' fees in Count I of the Counterclaims because such damages and attorneys' fees are not recoverable for breach of contract under Florida law or the Plan itself; and (ii) the jury trial demand and anti-SLAPP allegations contained in Count II of the Counterclaims. *See* Federal Rule of Civil Procedure 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). In support of this Motion, Defendant submits the following memorandum of law.

## II.     MEMORANDUM OF LAW

### A.     Count I of the Counterclaims for Breach of Contract Should be Dismissed Because it Fails to State a Claim Upon Which Relief May Be Granted.

Count I for breach of contract should be dismissed in its entirety because (1) Mayland cannot show any of the elements necessary to demonstrate the existence of a valid and enforceable contract; (2) Mayland has not specifically pled special damages; (3) counterclaims may not be brought against non-parties (here, BGG); and (4) there is no contractual or statutory basis for Mayland's claim for attorneys' fees.

### 1.     The Plan's Own Terms Demonstrate that It Is Not an Enforceable Contract Under Florida Law.

To state a claim for breach of contract, a plaintiff must demonstrate: 1) the existence of a contract; (2) a material breach of that contract, and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008). To demonstrate the first prong—the existence of a valid contract—a plaintiff must show: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *See Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1272 (11th Cir. 2009) (*quoting Pineda v. PRC, LLC,* 2011 BL 194084, 4 (S.D. Fla. July 22, 2011). By Mayland's own admission, however, he cannot show any of the elements necessary to demonstrate the existence of a valid and enforceable contract. In addition, whether an enforceable contract exists or not is a question of law, not fact, and it is therefore proper for this Court to dismiss Count I of the Counterclaims as a matter of law. *Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 579 (Fla. 5th DCA 2002) (reversing trial court's final judgment on jury's verdict and stating trial court erred by not granting directed verdict because policy statement in employee handbook, in and of itself, does not constitute an enforceable employment contract to pay overtime under Florida law).

In this case, Count I of the Counterclaims alleges Counter-Defendants breached the 2016 Plan and its 2019 amendment by providing a "fraudulent set of numbers" or "doctored forecasts" to an independent valuation firm, resulting in a valuation that did not meet the minimum thresholds for Mayland to receive a payment of a Target Award under the Plan. Mayland's claim, however, is directly contrary to well-established Florida law. Both federal and state courts in Florida have long held that "[i]t is well established Florida law that policy statements in employee manuals do not give rise to enforceable contract rights in Florida unless they contain specific language that

expresses the parties' mutual agreement that the manual constitutes a separate employment contract." *Quaker Oats Co.*, 818 So. 2d at 576-77.

Specifically, Mayland's claim for breach of contract should be dismissed with prejudice on two separate grounds, either one of which would warrant dismissal of Count I of the Counterclaims. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) (explaining the purpose of Federal Rule of Civil Procedure 12(b)(6) is to eliminate baseless claims and to streamline litigation by dispensing with allegations that will result in needless discovery). First and foremost, the Plan is not an enforceable contract under Florida law because it is a discretionary incentive plan. Second, even if the Plan were a contract, it is, at best, an unenforceable illusory contract. In particular, the plain language of the Plan itself makes clear that it is a *discretionary* bonus plan and is therefore, not enforceable under Florida law. *OneSource Facility Servs., Inc. v. Mosbach*, 508 F. Supp. 2d 1115 (M.D. Fla. 2007) (granting defendant's motion to dismiss employee's breach of contract claim, stating that the employee did not have a contractual right to receive bonus under the 2004 MIC Plan because the plan was not an enforceable contract); *see also Pineda v. PRC, LLC*, 2011 BL 194084, at *4 (S.D. Fla. July 22, 2011) ("Plaintiff has failed to allege the four elements of a valid contract, and has therefore has not stated a claim for breach of contract"). Indeed, the plan at issue in this case directly refutes Mayland's claim that he has an enforceable right to payment under the Plan by explicitly stating, "[n]o person shall have any right to be granted a Cash LTIP Award under the Plan, and there is no obligation for uniform treatment of Eligible Employees under the Plan." LTIP, ¶ 8.3.

Under governing Florida law, discretionary incentive and bonus plans such as the Plan do not give rise to enforceable contract rights unless they contain specific language which expresses the parties' explicit mutual agreement that it constitutes a separate employment agreement. *See, e.g., Parrish v. General Motors Corp.*, 137 So. 2d 255, 258 (Fla. 2d DCA 1962); *OneSource Facility Servs., Inc. v. Mosbach*, 508 F. Supp. 2d 1115 (M.D. Fla. 2007); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). Indeed, "the mere possibility or prospect of a bonus, without more, can not [sic] be regarded as a condition of employment conferring a right enforceable at law." *Parrish*, 137 So. 2d at 258 (holding an employee had no vested right to a bonus under a plan which, by its terms, gave the employer full discretion to determine any bonus award).

By its own terms, the Plan itself demonstrates that it is not an enforceable valid contract under Florida law. Under the most liberal reading of the Plan, it is, at best, an illusory "promise" to pay Mayland a Target Award, which is not mutually enforceable as a matter of law. *OneSource Facility Servs., Inc. v. Mosbach*, 508 F. Supp. 2d 1115 (M.D. Fla. 2007) (holding that even if the document in question "could be construed to contain a 'promise' to pay [] bonuses…it was clearly an illusory promise unenforceable as a matter of law") (quoting *Rosenberg v. Lawrence*, 541 So. 2d 1204, 1206 (Fla. 3d DCA 1988)). Mayland was under no obligation to continue his employment with Brightstar, nor was Brightstar under any obligation to pay awards under the Plan. *See OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 359 F. Supp. 3d 1163, 1171 (S.D. Fla. 2018) ("The Agreement's obligations on Defendant can be more succinctly summarized as 'I will if I want to.'") (citing *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010)).

Indeed, the plain language in the Plan itself and applicable Florida law demonstrate that the Plan is a discretionary bonus plan and Brightstar owed no contractual duty to pay Mayland a Target Award under the Plan:

- 6.1.1: The Plan shall be administered by the Committee, *which shall have the full power and express discretionary authority to administer the Plan*, including discretion to (a) select the Eligible Employees who are to participate in the Plan, (b) interpret the Plan, (c) prescribe, amend, and rescind rules relating to the Plan, (d) determine the terms and conditions of Cash LTIP Awards, consistent with the Plan, (e) determine entitlement to Cash LTIP Awards and the amount of any Cash LTIP Awards, and (f) make all other determinations deemed necessary or advisable for the administration of the Plan.  The Board shall have the full power and express discretionary authority to determine Company Equity Value, as set forth in Section 3.4, and to take any action of the Committee under the Plan;

- 6.1.3: All determinations of the Board or the Committee pursuant to its authority under the Plan shall be conclusive and binding.  All Cash LTIP Awards shall be made conditional upon the Participant's acknowledgement, by participation in the Plan, that all decisions and determinations of the Board or the Committee shall be final and binding on the Participant, his or her beneficiaries, and any other person having or claiming an interest under a Cash LTIP Award;

- Art. VII—Termination and Amendment:  The Board may amend or terminate the Plan; provided that no such termination or amendment of the Plan may, without the consent of the applicable Participant, adversely affect an outstanding Target Award under the Plan, except

as needed to bring the Plan into compliance with the requirements of Section 409A or an exemption under Section 409A.  If not earlier terminated, the Plan shall terminate after Cash LTIP Awards, if any, have been paid upon the Valuation Date;

- 8.2:  Recoupment.  Cash LTIP Awards shall be subject to any clawback, recoupment, or other similar policy adopted by the Board as in effect from time to time;

- 8.3:  No Right to Cash LTIP Awards.  No person shall have any right to be granted a Cash LTIP Award under the Plan, and there is no obligation for uniform treatment of Eligible Employees under the Plan; and

- 8.4:  No Right to Employment.  A Target Award shall not be construed as giving a Participant the right to be retained in the employ of the Company or an Affiliate.  The Company may at any time terminate an employee's employment free from any liability or any claim under the Plan.

While Mayland improperly alleges the legal conclusion that the Plan constitutes a valid contract twice in his Counterclaim (D.E. 7, ¶11 & ¶47), his factual allegations describe the Plan as "an employment program" for calculating "bonuses" or "awards" (*Id.* at ¶¶ 15-16), "an incentive bonus program" (*Id.* at ¶ 9), or alternatively a "bonus" in and of itself (*Id.* at 15). Mayland also refers to any payment that would have been made under the plan as an "award" or "bonus" to which participants may be "eligible" (*Id.* at ¶ 12), none of which indicate an entitlement owed. In fact, "Participant" is clearly defined as an "[e]mployee who is selected by the Committee as **eligible** to receive a Target Award under the Plan." LTIP, ¶ 9.15. Accordingly, the only criteria attached to that participation were conditions, which were necessary, but not sufficient for awards. D.E. ¶ 17. Even if, as he alleges, Mayland had met those minimum requirements for eligibility, neither he nor any other participant was entitled to any award.

Mayland's counterclaim selectively quotes from the Plan but does not offer it as an exhibit, perhaps because it is so obvious from the face of the document that it is not a contract. Rather, as his allegations and the four corners of the document make plain, the Plan is merely a discretionary bonus plan used to determine eligibility for a **possible** award. *Intertech Trading Corp. v. JP Morgan Chase Bank, N.A.*, Case No. 17-21091-CIV-ALTONAGA/Goodman, 2017 BL 304417, 7 (S.D. Fla. Aug. 28, 2017) ("When the exhibit, in this case the Agreement, contradicts the allegations of the pleading, the exhibit governs.") (citing *Crenshaw v. Lister*, 556 F.3d 1283 at 1292 (11th Cir. 2009)). Such a program is more akin to entering the lottery than a binding contract.

5

In *Parrish*, as in the Plan, "the bonus plan gave the employer, in writing, the discretion to award or choose not to award, a bonus. **Such a writing clearly establishes the employer's intention and does not give rise to a contractual bonus right.**" *Community Design Corp. v. Antonell*, 459 So. 2d 343, 345 n.4 (Fla. Dist. Ct. App. 1984) (contrasting *Parrish* to an enforceable oral contract). Try as he might, Mayland cannot simply will a valid contract into existence.

Consideration is an essential element for the formation of a valid contract. *See Molina v. Aurora Loan Servs., LLC*, 710 Fed. Appx. 837, 839 (11th Cir. 2017) (affirming the district court's dismissal of a breach of contract claim where plaintiff did not properly allege consideration). The Plan is an opportunity freely offered to eligible participants unsupported by any consideration. *See, e.g., Intertech Trading Corp.*, 2017 BL 304417, at *7 (citing *Kaufman v. Harder*, 354 So. 2d 109, 109 (Fla. 3d DCA 1978) (per curiam) ("The law is clear that there can be no indebtedness without legal consideration; and . . . a mere gratuitous promise of a future gift, lacking consideration, is unenforceable . . . .")). While Mayland is perhaps attempting to allege consideration in citing to the Plan's purpose of incentivizing its employees to remain with Brightstar, he "has not alleged that a bargained-for-exchange occurred". *Id.* (dismissing the alleged contract as nothing more than a gratuitous offer).

Finally, while Mayland alleges that his expectation of a Plan cash payout was a material reason for his remaining with Brightstar over the years (D.E. 7, ¶18], "an employee's mere expectations, however reasonable, are insufficient to create a binding term of employment." *OneSource*, 508 F.3d at 1123 (*citing Tohma v. Spalding & Evenflo Companies, Inc.*, 724 So. 2d 693, 694 (Fla. 2nd DCA 1999)).

Because the Plan is not a contract enforceable under Florida law, Mayland's breach of contract counterclaim should be dismissed on that basis alone. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (explaining that if, after all "legal conclusions" and "conclusory statements" are disregarded, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claim must be dismissed); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

2.      **Mayland's Claim for Special Damages For Alleged Breach of Contract Should Be Dismissed Because Special Damages Are Not Available For Breach of Contract Under Florida Law**

Mayland's claim for special damages for Count I of his Counterclaim should be dismissed because such damages must be pled specifically. Fed. R. Civ. P. 9(g). "The purpose of Rule 9(g) has been to ensure that a defendant not be unfairly surprised by claims for certain types of damages not explicitly pled." *Mancil's Tractor Serv., Inc. v. T&K Constr., LLC*, Case No. 15-80520-CIV-DIMITROULEAS/Snow, 2016 BL 437736, at *3 (S.D. Fla. Mar. 03, 2016). The only damages that Mayland alleges with specificity is $200,000 in compensatory damages that he claims to be owed under the Plan. "In Florida, 'special damages are those that do not necessarily result from the wrong or breach of contract complained of, or which the law does not imply as a result of that injury. [Rather], special damages are damages that do not follow by implication of law merely upon proof of the breach.'" *Id.* (citing *Land of Central Fla. LLC v. Jimenez*, 946 So. 2d 90, 93 (Fla. 5th DCA 2006)). Clearly, the $200,000 Mayland seeks, or any award under the Plan Mayland alleges he is owed, would flow directly from the supposed breach of contract.

3.      **Count I Should Be Dismissed Against BGG Because BGG Cannot Be Joined As a Party To This Action As A Counter-Claim Defendant**

Count I must be dismissed as to BGG because Federal Rule of Civil Procedure 13, which governs counterclaims in this Court, does not permit counterclaims to be brought against non-parties to the action such as BGG. Rather, Rule 13 only permits counterclaims be brought *against an opposing party* such as Brightstar in this case, but not BGG which is a non-party to the First Action brought by Brightstar against Mayland.

Federal Rules of Civil Procedure 19 and 20 govern compulsory and permissive joinder of additional persons as parties to a counterclaim or crossclaim and require certain allegations be pled in the complaint which are not pled in Count I of Mayland's counterclaims.[1]

Accordingly, Plaintiff's improper attempt to add BGG as a party to this action is not permissible under the procedural rules governing this action.

---

[1] Notably, for permissive joinder of parties, Rule 20(b) also provides protective measures available to the Court to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

4. **Mayland's Claim for Attorneys' Fees Under Count I Should Be Dismissed Because the Plan Does Not Provide For Such Relief, Nor Is It Available Under Florida Law.**

Finally, Mayland's claim for attorneys' fees for his breach of contract counterclaim should also be dismissed. "It is a well settled principle that attorneys' fees 'can derive only from either a statutory basis or an agreement between the parties.'" *Int'l Fid. Ins. Co. v. Americaribe-Moriarity JV*, 234 F. Supp. 3d 1242 (S.D. Fla. 2016) (citing *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1198 (Fla. 2009). In this case, the Plan neither mentions nor provides for recovery of attorneys' fees. Moreover, Mayland does not cite to any statutory basis, nor is there any, for his demand for attorneys' fees in a breach of contract claim.

B. **Count II Should Be Dismissed Because It Does Not Plausibly State a Claim Under Florida's Private Whistleblower Act**

Mayland alleges in his Counterclaim that he opposed "unlawful employment practices, which he reasonably believed had occurred." D.E. 7, ¶ 55. Thus, Mayland appears to be claiming a violation of subsection (3) of the FWA, which states: "Prohibitions.—An employer may not take any **retaliatory personnel action** against an employee because the employee has…objected to, or refused to participate in, any activity, policy, or practice of the employer, **which is in violation of a law, rule, or regulation**." Fla. Stat. § 448.102 (emphasis added).[2] To state a claim under section 448.102(3) of the FWA, Mayland must demonstrate that he: (1) engaged in statutorily protected expression; (2) suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity. *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. 2d DCA 2015) (quoting *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335 , 1336 (M.D. Fla. 2005)).

As discussed below, Count II of Mayland's Counterclaim against Brightstar does not plausibly allege the first (statutorily protected conduct) or third ("but for" causal link) elements of a FWA claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57, 566–67 (2007) (To plead a viable cause of action, pleading allegations must transcend the "speculative," "conceivable," and "possible," and must "state a claim to relief that is plausible on its face"). Specifically, the

---

[2] Accordingly, Brightstar will limit its argument in this Motion to alleged protected activity under § 448.102(3), but reserves its right to provide further argument and authorities relating to subsections (1) and/or (2) of the FWA should Mayland claim his counterclaim alleges he engaged in protected conduct under either or both of the first two subsections of the FWA.

Counterclaim does not plausibly allege an "activity, policy, or practice" of Brightstar that is in violation of a law, rule, or regulation. And, although termination is certainly an adverse personnel action under the FWA, Mayland's own email to Ms. Smith acknowledges that he (and many other employees) had already been furloughed due to COVID-19 **prior to** engaging in any alleged protected activity—*i.e.*, his June 18 email to Brightstar's Chief Administrative Officer and General Counsel/Head of Ethics Catherine Smith—thereby negating any suggestion Mayland's subsequent termination was a "retaliatory personnel action" in violation of the FWA. D.E., ¶ 32 ("I'm looking forward to your response **and also to returning from furlough**. By the way, I have been very glad to hear from some who remain active that Brightstar is performing relatively well through the COVID-19 situation, and wish you and the team the best as we all continue to work through these difficult times"). Nor could a post-termination filing of this lawsuit, which, contrary to Mayland's claim, is not a SLAPP lawsuit, constitute a "retaliatory **personnel** action" in violation of the FWA. Finally, the allegations contained in Count II of the Counterclaims do not plausibly allege a causal link between Mayland's June 18 email (or any other alleged protected activity) and his termination.

1.     **Mayland's June 2020 Communications or Counterclaim Do Not Allege a Violation of Law**

Recently, this Court has made clear that to state a claim under the FWA, a plaintiff must demonstrate that he objected to or refused to participate in a "violation of law, rule, or regulation" and the FWA does not provide protection to employees for "alleged" or "suspected" violations of law. *Butterfield v. JetBlue Airways Corp.*, No. 20-60660-CIV-DIMITOULEAS, 2020 BL 313794 *2 (S.D. Fla. Aug. 17, 2020) (citing *Kearns v. Farmer Acquisition Co.*, 157 So.3d 458, 462 (Fla. 2d DCA 2015)).[3] In *Butterfield*, this Court granted the defendant's motion to dismiss the plaintiff's amended complaint ("FAC"), finding Butterfield's FWA claim deficient because the FAC did not plausibly allege that he engaged in statutorily protected expression, nor did it plausibly allege a causal connection between the purported protected activity and Butterfield's termination. Although Butterfield's FAC alleged JetBlue Airways Corp. violated Florida's witness tampering statute by attempting to prevent him from consulting his attorney before discussing a matter involved in ongoing litigation, the Court concluded that such allegations are not sufficient for the

---

[3] Notably, this Court stated on this point, that it is "persuaded by Judge Antoon's opinion in *Grady* [sic] that the Supreme Court of Florida would adopt the Second DCA's opinion in *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. 2d DCA 2015) rather than the Fourth DCA's opinion in *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 916 (Fla. 4th DCA 2013)."

Court to make a reasonable inference that JetBlue committed an actual violation of the law, as required to state a claim under the FWA.  *Id*. at 3.

Here, Mayland's FWA Counterclaim does not even identify a specific law, rule, or regulation allegedly violated by Brightstar, which by itself warrants dismissal of Mayland's FWA claim.  *Id.* at 2 ("The FWA does not provide protection to employees for 'alleged' or 'suspected' violations of the law.") (citing *Graddy v. Wal-Mart Stores East, L.P.*, 237 F. Supp. 3d 1223, 1227 (M.D. Fla. 2017); *Colon v. TRC, Inc.*, 2007 WL 4145940, at *3 (M.D. Fla. Nov. 19, 2007) ("[The FWA] requires an actual violation of a law or rule be committed.  It is insufficient for the employee to reasonably believe or suspect that a violation has occurred.") (citation omitted); *Branche v. Airtran Airways, Inc.*, 2005 WL 1051097, at *2 (M.D. Fla. May 2, 2005) (granting summary judgment where plaintiff could not establish an actual violation of law and stating that "there are several Florida cases" that support that holding).

Moreover, the allegations in Mayland's FWA Counterclaim are not sufficient to support a reasonable inference that Brightstar committed an actual violation of the law, which lends further support for dismissal of Mayland's FWA claim.  Here, Mayland relies upon two potential instances of protected conduct—his June 18 and June 29 emails to Ms. Smith. D.E. 7, ¶¶ 32, 35. Like Mayland's Counterclaims, however, these emails do not allege an actual violation of law and, therefore, do not constitute statutorily protected conduct under the FWA.  Indeed, Paragraph 55 is the only paragraph in the Counterclaim that even alleges the practices were illegal.  Elsewhere in the Counterclaim, Mayland merely describes Brightstar's conduct as erroneous, dishonest, biased, and "inconsistent with [Brightstar's] regular business practices" D.E. 7, at 1. Similarly, Mayland repeatedly refers to Brightstar's Plan-determinative valuation as "fraudulent," but does not allege it is a violation of law, rule, or regulation. *Hathaway v. Ramco-Gershenson, Inc.*, No. 18-613590-CIV-DIMITROULEAS_SNOW, 2019 BL 101102 at *2 (S.D. Fla. March 21, 2019) (dismissing the plaintiff's amended complaint with prejudice for failure to plead his employer's policy is an actual violation of law, which is an "unequivocal" requirement to state a claim under the FWA). Indeed, this Court has consistently held, "[t]he FWA does not provide protection to employees for 'alleged' or 'suspected' violations of the law." *Id*. (citing *Graddy v. Wal-Mart Stores East, L.P.*, 237 F. Supp. 3d 1223, 1227 (M.D. Fla. 2017)); *Butterfield*, 2020 BL 313794 at *2. Thus, Mayland's vague and conclusory allegation in Paragraph 55 of the Counterclaim that he reasonably

believed that Brightstar engaged in "unlawful employment practices" is insufficient to state a claim under the FWA.

Similarly, even a good faith, reasonable belief that an employer's actions violated the law is insufficient to establish a *prima facie* case of a FWA violation. *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. Dis. Ct. App. 2015). Nor does Mayland's conclusory allegation that Brightstar engaged in "fraudulent conduct" meet the actual violation of law, rule, or regulation standard required to state a claim under the FWA. *Pinto v. Microsoft Corp.*, No. 12-60509, 2012 BL 252799 (S.D. Fla. Sept. 28, 2012) (dismissing Pinto's FWA claim because he failed to identify any specific enacted law, statute, ordinance, regulation, or administrative rule that the defendant allegedly violated).

In sum, Mayland's June 2020 emails (or any verbal communications (incorrectly) alleging Brightstar provided a "fraudulent set of numbers," as alleged in Mayland's FWA Counterclaim) do not constitute statutorily protected conduct and therefore, Mayland's FWA claim should be dismissed based on his failure to meet the first prong of a FWA claim.

### 2.    The Filing of a Lawsuit Against a Former Employee Does Not Constitute A Retaliatory Personnel Action Under the FWA.

Presumably in recognition that Florida does not provide a civil remedy for the filing of SLAPP actions, Mayland attempts to contort the FWA to obtain such relief by alleging, without any factual basis or citation to supporting evidence, that Brightstar's filing of this lawsuit constitutes an Unlawful Strategic Lawsuit Against Public Participation ("SLAPP") action against him. D.E. 7, ¶ 41; *see also, Iqbal*, 556 U.S. at 677–79 (a court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they are more than "'merely consistent with' a defendant's liability"). Mayland's theory of liability that the filing of a SLAPP action is actionable under the FWA is not only directly contrary to Florida law, it is a non-sequitor because Brightstar's filing of this lawsuit after Mayland's furlough and termination does not constitute a retaliatory personnel action as defined by the FWA.

Fla. Stat. § 448.101(5) defines a retaliatory personnel action as "the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment" (emphasis added). Under the plain language of the FWA, this lawsuit filed by Brightstar 41 days after Mayland's termination cannot support a FWA claim against Brightstar. *See, e.g., Wildstein v. Cheyenne*

*Holdings, Inc.*, 2016 WL 7366892, at \*2 (M.D. Fla. Aug. 9, 2016), *R. & R. adopted and confirmed*, *Wildstein v. Cheyenne Holdings, Inc.*, No. Case No: 6:16-cv-336-Orl-41TBS, 2016 WL 7338516 (M.D. Fla. Dec. 19, 2016) (denying plaintiff's amended motion for final judgment because, *inter alia*, the retaliatory action took place after the Plaintiff's employment had ended); *Myers v. Cent. Florida Investments, Inc.*, 2005 WL 8159927, at \*4, n.6 (M.D. Fla. Sept. 1, 2005), *R. & R. adopted*, 2005 WL 8159928 (M.D. Fla. Oct. 6, 2005) ("The Court rejects Plaintiff's contention that the subsequent lawsuits brought by Defendants well after her termination were adverse employment actions [under the Florida Whistleblower Act].")

Accordingly, Mayland's FWA claim should be dismissed without regard to whether one could reasonably conclude that Brightstar's lawsuit against him constitutes a SLAPP action, which is not the case.

3.  **The Timing And Sequence of Mayland's Termination Negates Any Argument that He Would Not Have Been Terminated But For His Protected Activity in June 2020**

Mayland concedes that he was furloughed due to Covid-19 **before** he engaged in any alleged statutorily protected activity, yet he claims that his subsequent termination on July 1, 2020 was retaliatory in response to his June 16 communications with Catherine Smith. Mayland's contention, however, lacks any reference to a factual basis for his wildly speculative and self-serving conclusion designed to create a claim for relief where none exists. *See Tucker v. Fla. Dep't of Transp.*, 678 Fed. Appx. 893, 896, 2017 BL 30964, 4 (11th Cir. 2017) ("Temporal proximity between the protected activity and the adverse action alone generally cannot show causation when the employer has contemplated the adverse action before the protected activity takes place") (citing *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1245 (11th Cir. 2016) (concluding that "no triable issue of causation exists" in retaliation claim when school district raised ethics concerns prior to administrator's protected activity, even though formal ethics complaint was filed afterwards)); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n a [Family and Medical Leave Act] retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation"). As aptly stated by the Eleventh Circuit Court of Appeals in the Title VII context but equally applicable under the FWA, "Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a [] complaint."

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010). Thus, even if Mayland's June 2020 communications with Ms. Smith could be construed as protected activity under the FWA, which they cannot, Mayland's FWA claim fails because he was already on thin ice (on furlough, which is a mandatory, unpaid leave from work) so those communications, regardless of how he characterizes them, cannot insulate Mayland against termination.

Moreover, the Counterclaim does not identify the decision maker(s) who decided to terminate Mayland, much less allege that such person(s) was or were aware of his alleged protected conduct at the time that decision was made. *Raney v. Vinson Guard Serv., Inc.*, 120 F. 3d 1192, 1197 (11th Cir. 1997) ("In order to satisfy the causal link prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.") (internal citations omitted); *Anderson v. Embarq/Sprint*, 379 F. App'x 924, 930 (11th Cir. 2010) (affirming grant of summary judgment for employer because "[n]either the decisionmaker who denied [plaintiff's] light-duty request nor the decisionmaker who terminated [plaintiff's] employment was aware of [plaintiff's] alleged protected activity"); *Trussel v. Quest Diagnostics*, Case No. 8:09–cv–811–T–33AEP, 2010 WL 2363390, at *5-6 (M.D. Fla. 2010) (granting summary judgment for employer on grounds that plaintiff failed to show causal connection because plaintiff's argument that decision maker had knowledge "was based on pure speculation").

In sum, Mayland's FWA claim does not state a claim to relief that is plausible on its face and therefore, should be dismissed.

### 4.    Mayland's Claim for Special Damages Under Count II Should Be Dismissed

The FWA provides the following relief for actions brought under Fla. Stat. § 448.103(1):

> (a) An injunction restraining continued violation of this act.
>
> (b) Reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position.
>
> (c) Reinstatement of full fringe benefits and seniority rights.
>
> (d) Compensation for lost wages, benefits, and other remuneration.
>
> (e) Any other compensatory damages allowable at law.

Florida Statutes, Fla. Stat. § 448.103(2).

For the same reasons discussed in Subsection II(A)(2), Mayland's claim for special damages under Count II must be dismissed because he has not specifically pled such damages. Furthermore, the statute does not provide for "special damages" and Mayland offers no arguments for their inclusion. *See, e.g.*, *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918, 2018 BL 537055, at *1-2 (S.D. Fla. May 24, 2018) (quoting *Branche v. Airtran Airways, Inc.*, 314 F. Supp. 2d 1194, 1196 (M.D. Fla. 2004)) ("the [Florida] legislature chose not to provide for punitive and non-compensatory damages in enacting Section 448.103(2) and this Court cannot judicially extend the remedies available beyond what the legislature has chosen."). As such, Mayland's claim for special damages under Count II should also be dismissed.

### C. Mayland's Demand For Jury Trial And Anti-SLAPP Allegations Should Be Stricken Pursuant to Rule 12(f)

#### 1. Mayland's Demand For Jury Trial Should Be Stricken Because Mayland Waived Any Entitlement to A Jury Trial In His RCA

Pursuant to Federal Rule of Civil Procedure 12(f), Brightstar moves to strike the Defendant's demand for a jury trial. Mayland waived any right to a jury trial affirmatively and in no uncertain terms when he entered into the RCA. "[A] party may waive its right to a jury trial if the waiver is knowing and voluntary." *Hamilton v. Sheridan Healthcorp, Inc*., No. 13-62008, 2014 WL 537343, at *2 (S. D. Fla. Feb. 11, 2014) (quoting *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006)).

Courts consider several factors when determining whether a contractual jury trial waiver was entered into knowingly, voluntarily, and intelligently. Those factors include: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate the terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. *Oglesbee v. Indymac Financial Servs., Inc.*, 675 F. Supp. 2d 1155, 1157-58 (S.D. Fla. 2009). Once a court determines that a jury trial waiver was made knowingly and voluntarily, the court should then determine "whether, in light of all the circumstances, the waiver was unconscionable, contrary to public policy, or simply unfair." *Id.* at 1158.

Here, all the factors weigh in favor of a finding that Mayland entered into the jury trial waiver in the RCA knowingly, voluntarily, and intelligently. First, there is no reason to believe, nor does Mayland allege any, that the mutual jury waiver in the RCA was not made knowingly

and voluntarily. It is therefore not unconscionable, contrary to public policy, or unfair. Next, the waiver is conspicuous. It appears in capital, bold font, whereas the other provisions are not bolded and are in sentence case. The page containing the waiver is initialed by Mayland, and the waiver extends onto the next page which is signed by Mayland and dated. Similar waiver provisions have been found to be conspicuous. *See Jaffe v. Bank of America, N.A.*, 395 F. App'x 583, 586 (11th Cir. 2010) (waiver reading in pertinent part that "THE PARTIES TO THIS AGREEMENT WAIVE TRIAL BY JURY"); *see also Milsap v. Cornerstone Residential Management, Inc.*, No. 05-60033, 2007 WL 965590, at *2 (S.D. Fla. Mar. 28, 2007) (upholding jury trial waiver in favor of multimillion dollar residential management company against a cosmetologist single mother where waiver "was just as visible and in the same size font as every other provision of the contract ... [and where] [n]o evidence is presented of any extreme bargaining disadvantage or" that the mother could not have simply walked away from the deal).

Additionally, as Mayland himself acknowledges, he is a seasoned professional who was promoted to increasingly senior roles within Brightstar. Courts have long recognized that "people of ordinary understanding are capable of binding themselves—and waiving a jury trial—by way of contract." *Oglesbee v. Indymac Financial Services, Inc.*, 675 F. Supp. 2d at 1158 (district manager with four years of post-high school instruction sufficiently sophisticated to waive jury trial); *Hamilton*, 2014 WL 537343 (rejecting plaintiff's argument that specialized legal knowledge is necessary for an individual to effectively waive the right to a jury trial). Just as the parties in *Oglesbee* and *Hamilton*, Mayland is sufficiently sophisticated to waive his right to a jury trial.

Additionally, there is no reason to believe, nor does Mayland allege any, that he did not have the ability to negotiate the terms of the RCA. The Court has recognized, "[s]imply because a party did not negotiate the language of a jury trial waiver does not mean that the waiver or other terms in the agreement were non-negotiable". *Oglesbee v. Indymac Financial Services, Inc.*, 675 F. Supp. 2d at 1158. Moreover, boilerplate contracts "are not per se non-negotiable." *Id*. Furthermore, if Mayland had found the jury trial waiver problematic and for some reason not been able to negotiate it, he could have found other employment. When determining whether a bargaining disadvantage supports a finding that a jury trial waiver is not effective, "[t]he question is not whether there was unequal bargaining power, . . .but whether there was a 'gross disparity in bargaining position . . .'" *Id*. at 1158. Such a disparity in bargaining power only exists where a party is forced to accept the terms of an agreement as written and is "unable to simply walk away

if the terms are unacceptable." *Id.* (quoting *Milsap*, 2007 WL 965590, *2). Like in *Milsap*, Mayland could have found employment elsewhere if the jury trial waiver was unacceptable to him, but he did not. Finally, there is no reason to believe, nor does Mayland claim any, that he attempted to retain counsel to review the RCA but was precluded from doing so. Therefore, the jury waiver is valid and enforceable against both parties.

While Mayland disputes the enforceability of the RCA's confidentiality provisions, such provisions, even if unenforceable, would not invalidate the contract in its entirety. Under Florida law, any specified restraint that is overbroad or otherwise not reasonable shall be modified by the court. Fla. Stat. § 542.335. Even if the court modified the breadth of the disputed confidentiality provisions, such modification would leave intact and have nothing to do with the RCA's jury trial waiver.

There is limited Florida case law regarding the scope of jury trial waiver provisions, but the Southern District of Florida has relied on cases analyzing the scope of arbitration agreements to determine the scope of a jury waiver provision. *See, e.g.*, *Milsap v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV-MARRA/JOHNSON, 2007 WL 965590, at *3 (S.D. Fla. Mar. 28, 2007) (noting, for purpose of analyzing scope of jury waiver provision, "In the related area of agreements providing for arbitration, courts have interpreted broadly a contract's provision for resolving disputes 'arising out of or relating to' the underlying contract."). The Florida Supreme Court considers language similar to that in the RCA's jury waiver as broad. *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 637 (Fla. 1999). Florida courts have found Florida Whistleblower Act claims to be within the scope of arbitration provisions in employment contracts with similar language to that of the jury waiver in Mayland's RCA. *See Hospicecare of Southeast Florida, Inc. v. Major*, 968 So. 2d 117, 119 (Fla. 4th DCA 2007) (holding that Florida Whistleblower Act claim was arbitrable under arbitration provision in employment contract requiring arbitration of "any controversy or claim arising out of or related to this Agreement, or any breach thereof"); *Delaurier v. American Welding Society, Inc.*, 881 So. 2d 613, 614 (Fla. 3d DCA 2004) (holding that Florida Whistleblower Act claim against former employer was arbitrable under arbitration clause in employment contract requiring arbitration of "[a]ny controversy or claim between the Executive and the Corporation *arising out of or relating to this Agreement*") (emphasis in original).

The "plain language" of the arbitration provisions and, as noted in *Hospicecare of Southeast Florida*, the fact that the Florida Whistleblower Act "expressly protects and preserves

the rights of parties to an employment contract where those rights are not inconsistent with the Act itself," dictate that Mayland's Florida Whistleblower Act claim is within the scope of the RCA's jury waiver provision.

The RCA, in bolded capitalized letters, states:

> "**THE EMPLOYEE AND COMPANY EXPRESSLY WAIVE A TRIAL BY JURY IN ANY ACTION BETWEEN THE EMPLOYEE AND THE COMPANY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.**"

D.E. 6-1, at 9-10.

The present controversy indisputably arises out of the RCA, as Brightstar brought a claim for breach of this very agreement, as well as claims under state and federal trade secrets statutes in order to secure the very Confidential Information and Trade Secrets protected by the RCA. With regard to the Defendant's counterclaims, each allegation raised by the Defendant is inextricably linked with the RCA itself, and the Confidential Information and Trade Secrets it protects.

### 2.   Defendant's SLAPP Allegations Should be Stricken Pursuant to Rule 12(f)

In the event the Court determines that dismissal of Count II of the Counterclaims is not warranted, Brightstar, in the alternative, moves to strike Mayland's unfounded and misguided SLAPP allegations (D.E. 7, ¶¶ 39, 41, 56, & 57), as irrelevant, confusing, and impertinent. *Nielsen Audio, Inc. v. Clem*, Case No: 8:15-cv-2435-T-27EAJ, 2016 BL 433045, at *2 (M.D. Fla. May 09, 2016) (striking an anti-SLAPP affirmative defense as improperly pled because it did not adequately allege *why* § 768.295 applied to the lawsuit and failed to allege that the lawsuit chilled "free speech in connection with a public issue," as required by Fla. Stat. § 768.295(3)). Mayland fails to allege either of those elements, nor does he establish any rational connection between Florida's Anti-SLAPP statute and his Counterclaim. *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314 (S.D. Fla. 2005) (Courts may strike allegations in pleadings that have "no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party"); *Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1243 (S.D. Fla. Nov. 28, 2012) (same).

Florida's general Anti-SLAPP statute, Fla. Stat. Ann. § 768.295(4) prohibits a person or government entity from:

> "...without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct

> representatives of government , or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and § 5, Art. I of the State Constitution."

Mayland's communications neither convey his intention to instruct representatives of government, nor to petition for redress of grievances before a governmental body. D.E. 7, ¶¶ 32-35. Further, the Defendant's speech is not connected with any public issue, since these issues are not currently under consideration by a governmental entity.

The First Action is not a SLAPP, and even if it were, it would be wholly irrelevant to Defendant's breach of contract and Florida Whistleblower Act counterclaims, and thus should be stricken. As the allegations are both wholly irrelevant and confuse the issues in this case, striking them from Mayland's Counterclaim is appropriate. *Blake v. Batmasian*, 318 F.R.D. 698, 700, 2017 BL 60162 (S.D. Fla. 2017) ("The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters.") (citing *Liberty Media Holdings, LLC v. Wintice Group, Inc.*, No. 6:10-cv-44-Orl-19GJK, 2010 BL 133584, at *1 (M.D. Fla. June 14, 2010)).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs/Counter-Defendants respectfully request that the Court enter an order dismissing with prejudice Mayland's breach of contract and Florida Whistleblower Act counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 8, and the pleading standards articulated by the Supreme Court in *Twombly* and *Iqbal*.

In the alternative, Plaintiffs/Counter-Defendants request that the Court enter an order striking, pursuant to Fed. R. Civ. P. 12(f), Mayland's jury trial demand and Anti-SLAPP allegations contained in his Answer, Affirmative Defenses, and Counterclaim (D.E. 7, ¶¶p. 24, 27 & ¶¶ 41, 56). *See*, *e.g. Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345 (S.D. Fla. 2012) (striking Plaintiff's jury demand based upon a jury waiver in an agreement).

Dated this 14th day of October 2020.

*/s/* Carol A. Field
Anne Marie Estevez
Florida Bar No. 991694
Email: aestevez@morganlewis.com
Carol A. Field
Florida Bar No.: 987166
Email: carol.field@morganlewis.com
Dalisi O. Carrasco
Florida Bar No. 123634
Email: dalisi.carrasco@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131
Phone: (305) 415-3409
Fax: (305) 415-3001

*Counsel for Plaintiff Brightstar Corp. and*
*Brightstar Global Group, Inc.*

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I hereby certify that on October 14, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission or Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Carol A. Field*
Carol A. Field

**SERVICE LIST**

Michael Joblove
Florida Bar No.: 354147
mjoblove@gjb-law.com
Omar K. Bradford
Florida Bar No. 90444
obradford@gjb-law.com
Genovese, Joblove & Battista P.A.
100 SE 2nd Street, Suite 4400
Miami, FL 33131
Phone: (305) 349-2300
Fax: (305) 349-2310

*Counsel for Defendant David Mayland*

DB1/ 116572027.5

20