UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-23325-CIV-DIMITROULEAS

BRIGHTSTAR CORP.,

    Plaintiff,

v.

DAVID MAYLAND,

    Defendant.

_____/

DAVID MAYLAND,

    Counter-Plaintiff,

v.

BRIGHTSTAR CORP., BRIGHTSTAR
GLOBAL BROUP, INC.,

    Defendant.

_____/

## ORDER GRANTING IN PART COUNTER-DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Counter-Defendants' Joint Motion to Dismiss Counter-Plaintiff's/Defendant's Counterclaims with Prejudice, or Alternatively, Motion to Strike Jury demand and References to Anti-SLAPP in Counterclaims [DE 11] ("Motion"). The Court has considered the Motion, Counter-Plaintiff's Response [DE 17], Counter-Defendants' Reply [DE 18], and the record in this case and is otherwise advised in the premises. For the reasons discussed herein, the Motion shall be granted in part.

I. **BACKGROUND**

Counter-Plaintiff was employed by Counter-Defendant Brightstar Corp. ("Brightstar") from August 2013 through July 2020 in various senior management positions. [DE 17 at 3]. In August 2016, he was selected to participate in Brightstar's Long-Term Incentive Plan ("LTIP"). *Id.* Under the terms of the LTIP, if Brightstar's valuation hit a certain threshold by the end of a specified performance period, then Counter-Plaintiff would be entitled to a bonus, provided he remained employed at Brightstar. *Id.* at 4. Due to poor performance in 2018, the bonuses were not paid, and the LTIP was amended to extend the performance period through the end of 2019, to increase the target bonuses, and to reduce the valuation threshold. *Id.*

It is undisputed that Counter-Plaintiff remained employed at Brightstar through the necessary date. However, a third-party valuation firm found that Brightstar did not meet the valuation threshold. [DE 7 at 20]. Therefore, no bonuses were paid under the LTIP. *Id.* Upon review of the valuation, however, Counter-Plaintiff determined that Brightstar had sent the valuation firm figures that differed significantly from the figures it had provided to other third-party lenders, which allegedly painted a more favorable picture of Brightstar's worth. *Id.* at 20-21. Counter-Plaintiff, who has a background in finance, concluded that the information provided to the valuation firm was incorrect, and that a correct valuation would yield a result that exceeded the threshold. *Id.* at 21-22. He brought his valuation to the attention of Catherine Smith, Brightstar's Chief Administrative Officer and General Counsel/Head of Ethics, which began a two-weeks discourse over telephone and email in which Counter-Plaintiff accused Brightstar of providing fraudulent data to the valuation firm. *Id.* at 22-24. Two weeks after bringing his concerns to Smith, on July 1, 2020, Counter-Plaintiff was terminated. *Id.* at 24.

Brightstar brought suit against Counter-Plaintiff a few months after firing him, asserting that Counter-Plaintiff had violated the Defend Trade Secrets Act, the Florida Uniform Trade Secrets Act, and a restrictive covenant agreement. [DE 1]. Counter-Plaintiff filed an answer denying all allegations against him and asserting two counterclaims against Brightstar and its parent company: breach of contract and violation of Florida's Whistleblower Act. [DE 7]. Counter-Defendants now ask for these counterclaims to be dismissed.

## II.     LEGAL STANDARD

"[A] motion to dismiss a counterclaim is evaluated in the same manner as a motion to dismiss a complaint." *Martin v. Partsbase, Inc.*, No. 20-80235-CIV, 2020 WL 7495536, at *2 (S.D. Fla. Dec. 4, 2020). Under Federal Rule of Civil Procedure 12(b)(6), a party may move a court to dismiss all or part of a complaint for failure to state a claim upon which relief may be granted. When reviewing a motion to dismiss, "[a]ll of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff." *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1037 (11th Cir. 2008). Courts need not, however, accept mere legal conclusions. *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 808 (11th Cir. 2015). To survive a motion to dismiss, a complaint must therefore contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is to say, the alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.    DISCUSSION

Counter-Defendants assert that both Count I and Count II of the counterclaims ("Counterclaim I" and "Counterclaim II," respectively) must be dismissed because they both fail

to state a claim upon which relief may be granted. In the alternative, they ask the Court to strike Counter-Plaintiff's request for special damages and attorneys' fees in Counterclaim I, his jury demand, and all references to its action against Counter-Plaintiff as a strategic lawsuit against public participation, or SLAPP suit. The Court shall address each counterclaim in turn.

### A. Counterclaim I: Breach of Contract

Under Florida law, a breach of contract claim requires a showing of: 1) the existence of a contract; (2) a material breach of that contract, and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008). Counter-Defendants assert that Counter-Plaintiff cannot show the first element because the LTIP was not an enforceable contract. Counter-Plaintiff responds that the LTIP constitutes an offer, acceptance, consideration, and sufficient specification of essential terms, which is all Florida law requires of an enforceable contract.

Although Counter-Plaintiff correctly states the elements of an enforceable contract under Florida law, *see St. Joe Corp. v. McIver*, 875 So. 2d. 375, 381 (Fla. 2004), his response neglects the fact that Florida courts have consistently found that incentive schemes like the LTIP do not satisfy all those elements. For example, in *Parrish v. Gen. Motors Corp.*, 137 So. 2d 255 (Fla. 2nd DCA 1962), an employee alleged that his former employer had breached a contract when the employer failed to pay him an annual bonus pursuant to a bonus plan. That bonus plan specifically stated that all administrative authority was delegated to a committee appointed by the employer, and that the committee would have discretion with respect to the determination of each award. *Id.* at 256. The Florida appellate court found that a "bonus, under the plan described herein, partakes of gratuity while lacking essential elements of contractual obligation." *Id.* at 258. The court further found that where a plan puts an employee on notice that "a bonus

award may be granted or withheld as to any employee at the discretion of the employer," the incentive is only a "mere possibility" of a bonus, not an enforceable right. *Id.* Similarly, in *OneSource Facility Servs., Inc. v. Mosbach*, 508 F. Supp. 2d 1115 (M.D. Fla. 2007), a federal district court applying Florida law found that an employee could not show that a bonus plan constituted an enforceable contract where the plan specifically stated that the employer's senior management were imbued with sole authority and discretion to administer the plan, and that the plan could be amended or terminated at any time. "[I]t is clear from the terms of the [] Summary Document . . . that there was no contractual duty on the part of OneSource to pay [the plaintiff] or any of its other Vice Presidents bonuses . . . ." *Id.* at 1123.

Counter-Plaintiff asserts (i) that these cases are inapposite because the plans at issue in *Parrish* and *OneSource* are appreciably different from the LTIP, and (ii) that *Focus Mgmt. Grp. USA, Inc. v. King*, 171 F. Supp. 3d 1291 (M.D. Fla. 2016), more closely resembles the case at hand. Neither argument is persuasive. With respect to the latter, in *King*, the court specifically found that the employee's bonus compensation was "interwoven with the terms of [his] employment." *Id.* at 1298. The same is not true of LTIP. Whereas in *King*, the bonus formula was described in the employee's offer letter and "expressly offered as an incentive to secure [King] as an employee," Counter-Plaintiff had already been employed with Brightstar for three years before being selected as an LTIP participant. Also, King had been paid consistent with the bonus formula for several years, while Counter-Plaintiff has never received incentive compensation from the LTIP, and in fact has been denied a payout once before. There are no facts in the present case from which the Court could conclude that the LTIP was sufficiently "interwoven" with Counter-Plaintiff's employment contract such that it could be the basis for a breach of contract claim.

Nor does the Court find that the facts of *Parrish* and *OneSource* are appreciably distinguishable from those of this action.  Counter-Plaintiff states (i) that the alleged bonus entitlement in *Parrish* was oral, whereas here the entitlement is pursuant to a written document, and (ii) that, unlike the plan at issue in *OneSource*, the LTIP's terms only allow it to be amended or terminated if such termination or amendment would not adversely affect a participant's payout.   But although the plaintiff in *Parrish* was employed pursuant to an oral agreement, the bonus plan at issue there was reduced to writing, and the court's determination was based entirely on those written terms.  The question of entitlement had nothing to do with the plaintiff's oral employment contract.  And while the LTIP does have a slightly different amendment provision than the plan in *OneSource* did, this minor difference does not render the LTIP an enforceable contract.  The amendment clause was only one provision of several upon which the *OneSource* court based its determination.  The court also noted that the *One Source* plan explicitly disavowed that any bonus plan participant would have a right to any bonus payments and that the plan was to be administered solely by the employer's senior management.  *Id.* at 1122 (M.D. Fla. 2007).

Here, it is undisputed that the LTIP stated (i) that all authority to interpret, construe, and administer the plan was vested in Brightstar's Board's Compensation Committee, (ii) that the Compensation Committee had the authority to determine entitlement to LTIP awards and the amounts to be awarded, (iii) that all the Compensation Committee's decisions would be final and binding upon all participants, and (iv) that all bonuses under the LTIP were discretionary.  Looking at the LTIP as a whole, it is clear that it does not qualify as an enforceable contract under Florida law.  The Court therefore concludes that Counter-Plaintiff has failed to state a claim for breach of contract and Counterclaim I must be dismissed.

### B. Counterclaim II: Florida Whistleblower Act

To state a claim under the Florida Whistleblower Act ("FWA"), Counter-Plaintiff must show (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that the adverse employment action was causally linked to the statutorily protected activity. *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. 2d DCA 2015) (quoting *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005)). Counter-Defendants assert that Counter-Plaintiff has failed to show either the first or the third of these elements. Counter-Plaintiff responds that with respect to the first element, he has clearly asserted that he reasonably believed that Brightstar engaged in unlawful employment practices and violated securities laws. And with respect to the third element, Counter-Plaintiff argues that he has alleged sufficient facts to show that his termination was retaliation for his objection to Brightstar's alleged unlawful acts.

As a preliminary matter, Counter-Defendants argue that the Court should disregard the assertion that Counter-Plaintiff accused Brightstar of violating Securities and Exchange Commission ("SEC") regulations because this allegation is absent from Counter-Plaintiff's pleading. The first mention of any alleged SEC violation is in Counter-Plaintiff's response brief. Counter-Plaintiff attaches an email as an exhibit to his response that shows that he told Smith "I believe that such a conspicuous fraud is a clear violation of [SEC] regulations . . . ." (ECF No. 17-3 at 2). But "typically, a motion to dismiss must be converted into a motion for summary judgment when a district court considers matters outside the pleadings." *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770 (11th Cir. 2018) (citing Fed. R. Civ. P. 12(d)). There is an exception to this rule, however, if the extraneous document is referenced in a pleading, is central to the pleading, and no party questions its authenticity. *Id.* Counter-Defendants do not

7

argue that the email itself is inauthentic, and the email is referenced in both Counter-Plaintiff's and Counter-Defendants' pleadings. The Court cannot find, however, that it is central to Counter-Plaintiff's pleading. The plain language of Counterclaim II states that the FWA claim is predicated upon an allegation of unlawful employment practices, not an allegation of SEC violations. There is no mention anywhere in Counter-Plaintiff's pleading that he made any such accusation while employed at Brightstar. In fact, Counter-Plaintiff specifically edited excerpts from the email in question to omit the reference to SEC regulations. This is not the sort of treatment one would expect to be given to a document that is central to a pleading. The Court will therefore not consider the email exhibit in this discussion.

Counterclaim II clearly asserts that Counter-Plaintiff's FWA claim is based upon his accusation that Brightstar engaged in unlawful employment practices. It is also reasonably clear that the unlawful practice Counter-Plaintiff is referring to is the breach of contract alleged in Counterclaim I. As discussed above, however, Counter-Plaintiff has failed to properly state that claim, and therefore he has also failed to properly state a predicate offense for his FWA claim. Consequently, the Court must agree with Counter-Defendants that Counterclaim II must also be dismissed.

### C. Leave to Amend

Counter-Plaintiff asks, if his counterclaims are dismissed, that he be granted leave to amend his pleading. While the Court disagrees with Counter-Plaintiff's assertion that to deny him that opportunity this early in the action would be "impermissible," Rule 15 of the Federal Rules of Civil Procedure does state that courts "should freely give leave when justice so requires." Given that this matter is in the early stages of litigation, and that Counter-Defendants

did not reply to Counter-Plaintiff's request for leave to amend, the Court will grant Counter-Plaintiff the opportunity to refile his pleading.

Because the Court has found that Counter-Plaintiff's claims are due to be dismissed as currently pled, the Court will not address, at this time, each potential issue with the counterclaims, including Defendants' alternative request to strike Counter-Plaintiff's jury demand and anti-SLAPP allegations. The Court advises Counter-Plaintiff to consider the issues raised by Defendants in drafting amended counterclaims.

## IV.   CONCLUSION

Based on the foregoing, it is accordingly **ORDERED AND ADJUDGED** that:

1. Counter-Defendants' Joint Motion to Dismiss Counter-Plaintiff's/Defendant's Counterclaims with Prejudice, or Alternatively, Motion to Strike Jury demand and References to Anti-SLAPP in Counterclaims [ DE 11] is **GRANTED in part**.

2. Counter-Plaintiff's counterclaims are **DISMISSED** without prejudice to Counter-Plaintiff filing an amended pleading on or before **April 27, 2021**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this April 13, 2021.

*[Signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of record